**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AZANIAH BLANKUMSEE,                    *

     Plaintiff,                    *

v.                    *                    Civil Action No. PWG-13-2507

DEPARTMENT OF CORRECTIONS, *et al.*,    *

     Defendants.                    *
                 ***

**MEMORANDUM**

Pending is Defendants' motion to dismiss or, in the alternative, for summary judgment, ECF No. 22.  Plaintiff opposes the motion and filed a cross-motion for summary judgment,[1] ECF No. 28.  A hearing in this matter is unnecessary.  *See* Loc. R. 105.6 (D. Md. 2014).  I will construe Defendants' motion as one for summary judgment and, finding no genuine dispute of material fact, will enter judgment for Defendants.

**I.     BACKGROUND**

    **A.     Plaintiff's Allegations**

Plaintiff Azaniah Blankumsee is a prisoner incarcerated at North Branch Correctional Institution ("NBCI") and, at times relevant to this complaint, he also has been incarcerated at Western Correctional Institution ("WCI").  His original Complaint, ECF No. 1, references a prior lawsuit filed on July 29, 2013, in which I dismissed without prejudice Blankumsee's Eighth Amendment claim regarding the conditions of his confinement.  Compl. 2; *see Blankumsee v. Dep't of Corr.*, No. PWG-13-1751, 2013 WL 3934035, at *2–4 (D. Md. July 29, 2013) ("To the

---

[1] In addition to his motion for summary judgment, Plaintiff has filed several declarations in support of his claim.  ECF Nos. 13, 14, 25, 30 and 31.  The declarations shall be considered as part of Plaintiff's opposition to Defendants' motion.

extent Blankumsee claims Eighth Amendment violations based on the conditions of his confinement, his claims will be dismissed without prejudice to refiling in a separate complaint."). Additionally, in that case, I dismissed Blankumsee's claim regarding improper classification for failing to state a cognizable claim. *Id*.

In this case, Blankumsee asserts that Defendants' violations of his constitutional rights have resulted in his placement in "solitary confinement,"[2] denial of access to the courts, loss of privileges, limited programming, denial of recreation, and loss of visits. Compl. 2. He adds that he is in fear for his safety, which has affected his emotional and physical health adversely. *Id*. at 3.

At my direction, ECF No. 4, Blankumsee filed an Amended Complaint, ECF No. 5, to provide facts supporting his claim that the conditions of his confinement violated his Eighth Amendment right to be free from cruel and unusual punishment. In the Amended Complaint, he claims that since August 5, 2013, he has been provided only one fifteen minute shower per week, which he concludes is cruel and unusual punishment. Am. Compl. 5. In addition, he alleges he is allowed only one hour of recreation per week and was denied access to the law library after he was told by officers no such library exists. *Id*. He states he was "starved" during the week of September 30, 2013, as he allegedly was denied a proper diet and fed one sandwich and four cookies for dinner. *Id*. Blankumsee claims that as a result of these conditions, he has missed court deadlines, lost weight, been unable to prepare for court appearances, lost contact with family members, and been unable to exercise. *Id*. He alleges that these actions were taken in

---

[2] Blankumsee, in his Opposition, argues that "Not once in plaintiffs [sic] complaint does he allege subjection to solitary confinement." Pl.'s Opp'n 11. Yet, the second page of his Complaint alleges "Plaintiff claims that as the [sic] result of defendant's violations of his constitutional rights, he is subject to solitary confinement . . . ." Compl. 2.

general retaliation against the prison population for a string of assaults against corrections officers, after which the prison was placed on lockdown. *See* Blankumsee Decl. 1, ECF No. 35; *see also* Smith Decl. 1, ECF No. 13; Fletcher Decl. 1, ECF No. 14.

Blankumsee further alleges that in 2010, after staff at NBCI labeled him as a member of a gang, he began to receive life-threatening letters and verbal threats from inmates who are serving life sentences. Am. Compl. 5. When Blankumsee made prison officials aware of the threats, he was removed from general population and put into administrative segregation. Blankumsee claims that he was called into an office on an undisclosed date and told by an unnamed officer that letters containing threats against his life had been received and that, for Blankumsee's safety, he would need to be transferred to another prison. On May 19, 2010, Blankumsee was transferred to WCI, where he remained until December of 2011. During his confinement at WCI, Blankumsee alleges he was assaulted and subjected to extortion, resulting in the loss of his personal property. He believes his assailants were gang members affiliated with those who threatened his life at NBCI. When Blankumsee made WCI officials aware of the assaults and extortion, he was transferred back to NBCI and placed on administrative segregation. *Id.* at 6.

Blankumsee claims that, after returning to NBCI, he wrote to all Defendants named in this case, stating his safety was at risk, but he only has received a reassurance from "S. Johnson" that she would look into his claims. Blankumsee maintains that NBCI houses inmates who are serving life sentences and those who are extremely violent. He claims that, since 2012, he has been put into cells with inmates who are extremely violent, members of gangs, and serving life sentences. He claims this practice has put his life in "great danger at all times." *Id.*

B.      **Defendants' Response**

Defendants assert that Blankumsee's claim regarding his assignment to a maximum security prison was litigated previously and may not be raised again in the context of this case. Defs.' Mem. 9 (citing *Blankumsee*, 2013 WL 3934035, at *3).  They further state that Defendant Johnson, the only defendant who allegedly participated in the events set forth in the Amended Complaint personally, denies taking any action against Blankumsee for purposes of retaliating against him or with discriminatory purpose.  *Id.* at 7–9.

With respect to Blankumsee's claims that his personal safety is imperiled by his confinement at NBCI, Johnson asserts that Blankumsee never raised any concerns during classification interviews.   To the contrary, Blankumsee informed Johnson that he had no problems being placed in general population at NBCI and voiced no complaints about solitary confinement or loss of privileges.  Def.'s Mem. 3 (citing Case Notes 4, Defs.' Mot. Ex. 6, ECF No. 22-8).  Johnson further contends that Blankumsee admitted that his desire to be placed in programming at NBCI was motivated solely by his desire to obtain a single cell.  *Id.* (citing (citing Case Notes 8).

The remaining Defendants, Warden Bobby Shearin and Richard Roderick, seek dismissal because the Amended Complaint does not contain any allegations regarding their personal involvement.  *Id.* at 7–8.  Additionally, all Defendants seek dismissal of Blankumsee's claims for failing to exhaust administrative remedies regarding a failure to protect him from the violence of other inmates, denial of access to the courts, and loss of any of the asserted privileges.  *Id.* at 10–12.

## II.    STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999,) *aff'd*, 213 F.3d 632 (4th Cir. 2000). The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant, in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III.    DISCUSSION

#### A.    Exhaustion of Administrative Remedies

Defendants assert, *inter alia*, that Blankumsee has failed to exhaust administrative remedies regarding the claims asserted.  Defs.' Mem. 10–12.  The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

 42 U.S.C. § 1997e.

As a prisoner, Blankumsee is subject to the strict requirements of the exhaustion provisions.  It is of no consequence that Blankumsee is aggrieved by the prison's response to a string of assaults, as explained below, as opposed to the general conditions of confinement claim.  *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is required even when the relief sought is not attainable through resort to the administrative remedy procedure.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  This Court may not consider a claim that has not been exhausted.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be "available" to the prisoner, and the courts are "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v.*

> *Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006).   Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.   *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006).   Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively.   *Id*. at 87.   Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.   *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Blankumsee's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense.   *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).   The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.   *Id.* at 530; *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

One of Blankumsee's claims is that after the prison was placed on lockdown, the administrative remedy process became dysfunctional and that his outgoing mail was not being delivered.   This is not a claim that is unfamiliar to this Court with respect to the administrative remedy procedure and delay or mishandling of mail.   Given the evidence submitted by Blankumsee regarding Warden Shearin's removal from office in part for failing to follow policy

and directives, *see* Michael A. Sawyers, *North Branch warden fired*, Cumberland Times-News, Feb. 3, 2014, http://www.times-news.com/local/x1280774311/North-Branch-warden-fired, Blankumsee Decl. Ex., ECF No. 31-1, I will reach the merits of his claims on the basis that the administrative remedy procedure was unavailable to him during the time proscribed by the regulations. *See Moore*, 517 F. 3d at 725.

###### B.    Classification Claim

Blankumsee's claim regarding Defendant Johnson's actions with respect to his assignment to maximum security is repetitive of the claim raised in his prior complaint. As I ruled in his previous case:

> Insofar as Blankumsee alleges denial of his right to due process, there is no constitutional right for an inmate prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *McKune v. Lile*, 536 U.S. 24, 26 (2002) (stating the "decision where to house inmates is at the core of prison administrators' expertise"); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"). Matters of security classification are reserved to the sole discretion of prison officials. *See Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994). Further, this Court is unaware of any Maryland law or regulation conferring a protected liberty interest on Maryland Division of Correction inmates that has been abridged here. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). In any event, Blankumsee is provided regularly scheduled classification review. Accordingly, his claim of improper security classification is not cognizable and will be dismissed.

*Blankumsee*, 2013 WL 3934035, at *3.

Even assuming the relitigation of this claim is not barred by *res judicata*, Blankumsee's attempt to resurrect this claim by asserting that his continued assignment to a maximum security facility is the result of retaliatory animus on the part of Defendant Johnson also fails.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).   However, the plaintiff "must show the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Neal v. Stouffer*, No. PJM-12-524, 2013 WL 693036, at *5 (D. Md. Feb. 25, 2013) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)).   "In the prison context, such claims are treated with skepticism because '[e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct.'"   *Id.* (quoting *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal quotations omitted)).   Blankumsee cannot state a claim under § 1983 for retaliation because the underlying right (i.e., to be housed in a particular facility) is not constitutionally protected or actionable.   *See id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 244–45 (1983)).

Even if the right was protected or actionable, "'[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"   *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).   Blankumsee's retaliation claim is "wholly conclusory."   *See Gill*, 824 F.2d at 194.   For the first time in his thirteenth filing in this case, and without supporting allegations as to Defendants' motive, Blankumsee asserts that, "as a result of retaliatory regulation from an officer being assaulted, administrative remedy procedure forms were either not made available by correctional officers[,] destroyed, or ignored by defendant Bobby Shearin."   Blankumsee Decl. 1.   Moreover, Defendants have provided a legitimate reason for

Blankumsee's continued assignment to maximum security, vitiating any claim that retaliation was the motivating factor. *See* Johnson Decl. ¶¶ 3–5, Defs.' Mot. Ex. 1, ECF No. 22-3 (declaring that Blankumsee's objective classification score warranted no change in his security assignment); Sec. Reclassification Ir. 1–2, Defs.' Mot. Ex. 3, ECF No. 22-5 (security assessment underlying Johnson's declaration); Case Notes 3 (evidencing that Blankumsee was advised of the criteria for transfer to lower security, including remaining infraction free for two years, which Blankumsee had not done, and memorializing Blankumsee's disinterest in participating in group programming). Also, the record makes clear that Defendants received and disposed of at least twelve administrative remedy forms from Blankumsee spanning from February 10, 2010 to October 9, 2013. *See* ARP Index Report, Defs.' Mot. Ex. 9, ECF No. 22-11. Additionally, Blankumsee filed three grievances with the Maryland Inmate Grievance Office. Oakley Decl. ¶ 3, Defs.' Mot. Ex. 10, ECF No. 22-12. Accordingly, Defendants are entitled to judgment in their favor on this claim.

### C.    Conditions Claim

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that merely are restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind."

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (internal citation omitted). "These requirements spring from the text of the [Eighth] amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and

absent severity, such punishment cannot be called 'cruel and unusual.'"  *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded.  *See Wilson*, 501 U.S. at 298.  In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."  *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).  Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law.  *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions.  *See Odom v. S.C. Dep't of Corr.*, 349 F. 3d 765, 770 (4th Cir. 2003).

Defendants' actions are not actionable unless, "in light of preexisting law the unlawfulness of those actions is apparent."  *Iko*, 535 F.3d at 238 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "We do not require of such officials the legal knowledge culled by the collective hindsight of skilled lawyers and learned judges, but instead only the legal

11

knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F. 3d 645, 650 (4th Cir. 2007).

As explained above, Blankumsee's claim regarding conditions of confinement is centered on the long-term lockdown of NBCI following several inmate-on-guard assaults. *See* Blankumsee Decl. 1; *see also* Smith Decl. 1; Fletcher Decl. 1. According to one inmate, the prison was placed on lockdown on August 5, 2013, and for the ten days of the lockdown inmates were not allowed recreation. *See* Smith Decl. 1. Additionally, Blankumsee states, and his fellow inmates confirm, that they were permitted only one shower per week during the lockdown, were served cold meals that were not nutritionally adequate or appetizing, and were denied phone and visitation privileges. Blankumsee alleges that as a result of these conditions he lost weight and experienced emotional distress. Compl. 2–3; Am. Compl. 5–6. Moreover, the lockdown, Blankumsee alleges, interfered with his access to the courts, his access to incoming and outgoing mail, denial of visitation, and access to the prison library. Am. Compl. 4.

Blankumsee bolsters his claim that the lockdown and the resulting conditions of confinement were unconstitutional with evidence that Warden Shearin was fired because of his decision to lock the prison down on a long-term basis. Blankumsee Decl. 1, ECF No. 31. He includes a news release listing the reasons Shearin was terminated, which included failure to hold staff accountable for actions that created an unsafe work environment; failure to communicate with the inmate population, which created an atmosphere of distrust; violation of policy and failure to follow orders and directives; and failure to address serious staff misconduct. *See* Sawyers, *North Branch warden fired*. Defendants have failed to respond to the content of Blankumsee's Declaration. However, even if the Warden's termination establishes that the NBCI lockdown was a bad decision and that the prison was not being managed efficiently, it

does not establish, by itself, that the conditions of confinement violated Blankumsee's Eighth Amendment rights.

In light of the record before me and resolving all inferences in favor of Blankumsee, the conditions were not so severe that Defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006). The temporary loss of privileges such as visitation, phone use, and recreation are not so egregious as to shock the conscience. The practice of allowing inmates only one shower per week and serving food they find distasteful during a brief period of time also does not approach the level of deprivation contemplated by the Eighth Amendment's prohibition of cruel and unusual punishment. And, as to his access to the courts allegations, he has identified "'no specific problem he wished to research and . . . no actual injury or specific harm which has resulted to him by his limited access to the jail library or its limited contents.'" *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993) (quoting *Magee v. Waters*, 810 F.2d 451, 452–53 (4th Cir. 1987)). Ultimately, Blankumsee has provided no evidence of any serious physical, psychological, or legal injury resulting from the conditions described. Accordingly, there exist no genuine disputes of material fact and Defendants are entitled to judgment in their favor on the conditions claim.

### D.      Failure to Protect Claim

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Blankumsee must establish that Defendants exhibited deliberate or callous indifference to a specific, known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

While Blankumsee maintains he was transferred from NBCI to WCI and from WCI to NBCI because he was targeted by gangs, evidence submitted by Defendants indicates only that his transfer was due to "STG activity." Case Notes 4. Upon his return to NBCI, it was noted that there was "nothing that would prevent him from being released" to general population at NBCI and that Blankumsee offered no objection to that plan. *Id.* In short, Defendants maintain that Blankumsee never voiced any concerns about his personal safety.

Blankumsee disputes the assertion that he never informed Defendants Johnson and Shearin that threats were made on his life. Pl.'s Mem. 4–5. He claims he wrote a letter to Shearin explaining he was receiving death threats from inmates who were angry because Blankumsee did not have a life sentence. *Id.* He further claims that he was forced to give these unnamed inmates his property in order to avoid being assaulted. *Id.* After he brought the letters and the extortion to the attention of correctional officers, Blankumsee claims he was placed on administrative segregation, but the threats continued. *Id.* Blankumsee further states that when threatening letters then were sent to Shearin, he was transferred to WCI, where the threats continued. *Id.* at 5. He then was transferred back to NBCI, where he claims his life and physical safety still are threatened. *Id.* Blankumsee concludes that his life is jeopardized by the fact that he is confined in a maximum security prison with inmates serving life sentences where, in his

opinion, he should not be confined.[3]  *Id.*  Despite my Order to "provide facts substantiating his allegation and describing his efforts to alert prison officials to his concern," ECF No. 4, Blankumsee provides no evidence to support his allegations that he informed prison officials of his alleged danger.

Even assuming that the threats Blankumsee describes in the pleadings filed with this Court were communicated to Defendants, it is improbable that a reasonable correctional official receiving the information would conclude that there is a specific risk of harm to Blankumsee's life or personal safety.  Indeed, other than in his self-serving statements, Blankumsee has offered no evidence that he communicated any fear of threats to prison officials, not to mention any specific threats that might induce their response.  He has not identified the inmates who are serving life sentences who have communicated these threats to him; nor has he identified a particular gang to which these inmates belong.  Further, the record in this case and Blankumsee's prison file document his persistent belief that he is confined improperly to a maximum security prison where inmates who are serving life sentences are confined.  The crux of Blankumsee's dissatisfaction with his assignment to NBCI or WCI, according to his brother, Tressie Smiley, Jr., is that his life sentence was overturned on appeal and, despite that legal victory, his personal circumstances have not changed or improved.  *See* Smiley Decl. 1, ECF No. 21; *see also* Am. Compl. 6 (stressing that NBCI houses violent prisoners serving life sentences).  Despite having been told the criteria for progressing to medium security, the recorded interactions with Blankumsee indicate he has not shown an interest in complying with the criteria and has chosen instead to attempt to force the move to lower security via litigation.  *See generally* Case Notes.

---

[3] Blankumsee is serving a sentence of 52 years, 11 months and 11 days from May 26, 2004.  Sec. Reclassification Ir. 1, Defs.' Mot. Ex. 5, ECF No. 22-7.  His mandatory supervision release date (MSR Date) is March 26, 2047, as of March 28, 2013.  *Id*

Thus, to the extent these alleged threats were communicated to prison officials by Blankumsee and no actions were taken as a result, Blankumsee must provide more than a "scintilla of evidence" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251. Ultimately, bare allegations of inaction, without evidence, do not establish deliberate indifference to Blankumsee's safety and Defendants are entitled to summary judgment on this claim.[4]

## IV.   CONCLUSION

In sum, Defendants' Motion, which I construe as a Motion for Summary Judgment, IS GRANTED.  Plaintiff's Cross-Motion for Summary Judgment IS DENIED.  A separate order follows.


July 22, 2014                                                          /S/
Date                                                             Paul W. Grimm
                                                                 United States District Judge

---

[4] To the extent Blankumsee continues to feel his life is threatened, he is no doubt aware of the requirement to provide specific information regarding those threats to prison officials and is encouraged to do so.